# In the United States District Court for the Southern District of Georgia Brunswick Division

| | | |
|---|---|---|
| RUBY C. MEEKS, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 213-011 |
| | * | |
| BRUNSWICK HOUSING | * | |
| AUTHORITY. | * | |
| | * | |
| | * | |
| Defendant. | * | |

## ORDER

Based on the alleged conduct of her former employer, the Brunswick Housing Authority ("BHA"), Plaintiff Ruby C. Meeks filed a complaint in this Court on January 14, 2013, alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.A. §§ 621-634, disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. §§ 12101-12213, and retaliation. See Dkt. No. 1. Meeks was permitted to amend her complaint in order to add a race discrimination claim under Title VII of the Civil Rights Act of 1974, as amended, 42 U.S.C.A. § 2000e et. seq., and the parties have now had the opportunity to file motions and briefs relating to that

AO 72A
(Rev. 8/82)

additional claim.  Before the Court today are Defendant BHA's

Motions for Summary Judgment.  Dkt. Nos. 28, 53.  BHA's Motions

for Summary Judgment are **GRANTED**.

## BACKGROUND

Defendant BHA manages public housing and "Section 8"

housing programs in Brunswick, Georgia.  Dkt. No. 31

("Strickland Decl."), ¶ 6.  Section 8, also known as the housing

choice voucher ("HCV") program, is a federal government

assistance program that supplies subsidies for low-income

families living in private housing.  Id.  According to BHA

Executive Director, Angela Strickland, BHA had lost staff over

time as a result of budget cuts and was consequently dealing

with a backlog of work in the Section 8 department.  Id. at ¶¶

3, 10.  In looking to fill an HCV Specialist position,

Strickland was hoping to employ a "self-starter" to help reduce

the backlog of work.  Id.  Among other duties, this person would

accept and process new HCV applications and conduct re-

examinations (or re-certifications) to determine continued

participant eligibility for the program.  Dkt. No. 33.

In 2012, Meeks applied for the HCV Specialist position.

She was interviewed by Strickland and Ruthie Knox, who was

Director of Operations for the BHA Central Office.  Id. at ¶ 8.

Meeks presented herself as having significant experience in the

housing industry, including with subsidized housing.  Id. at ¶

9. Strickland, who makes all of the hiring decisions for BHA, decided to hire Meeks. Dkt. No. 31-3 ("Strickland Dep.")[1], 11:8-24. Meeks began working for BHA on July 5, 2012. Dkt. No. 49-3 ("Meeks Dep.")[2], 63:10-11. Meeks understood that there was a six-month probationary period and that she was an at-will employee. Meeks Dep. 74:16-22. Jewel Small was the Director of Operations for the Section 8 program and Meeks' supervisor in the HCV Specialist position. Dkt. Nos. 32-1, 32-2 ("Small Dep.")[3], 6:9-11, 22:20-23. At the time Meeks started working for BHA, there were only two other people working in the Section 8 department: Rick Bassett, a housing inspector, and Small. Dkt. No. 37, ¶ 13; Dkt. No. 49-4, ¶ 13. Although Meeks acknowledges she does not know what input Small had in hiring her, Meeks had the impression that Small did not want her to have the job. Dkt. No. 49-4, ¶ 12; Meeks Dep. 118:24-119:9.

On the first day when Meeks met Small, Meeks said, "Call me Ruby", and Small responded, "Oh, I couldn't." When Meeks asked why not, Knox answered that it was out of respect for Meeks. Small called Meeks "Miss Ruby", which Meeks interpreted as a way

---

[1] Strickland's deposition, labeled Exhibit E, is comprised of Dkt. Nos. 31-3, 31-4, and 31-5. It will be referred to hereinafter as "Strickland Dep.".
[2] Defendant BHA submitted excerpts from Meeks' deposition, labeled Exhibit B and comprised of Dkt. Nos. 28-2 through 30-5. Meeks submitted her entire deposition transcript at Dkt. No. 49-3. As the two sets of transcripts are off by a page, the Court will refer to the entire transcript, Dkt. No. 49-3, as "Meeks Dep.".
[3] Small's deposition, labeled Exhibit H, is comprised of Dkt. Nos. 32-1 through 32-4. It will be referred to as "Small Dep.".

of emphasizing how much older Meeks was than the other employees. Meeks Dep. 185-86.

Meeks testified that she received "practically no[]" new hire training at BHA. Meeks Dep. 74:23-25. On Meeks' first day, in her first few hours at BHA, Brian Collins, an IT employee, came in to show Meeks the different computer programs and what they did. Meeks said that it was "a lot to absorb in a very short time. But for the preliminary [sic] it was okay." Id. at 75:1-14. Meeks expressed that while Collins showed her the BHA computer programs, he did not show her how to input information to the system, which was necessary for vouchers and re-certifications ("recerts"). Meeks Dep. 76:20-77:1. That was Small's job. Id.

Because of the overwhelming workload in the Section 8 department, Strickland attempted to have Hope Morris, Director of Public Housing at BHA, train Meeks in the HCV Specialist position. This would have allowed Small to continue working through the backlog of work without having to train a new employee. However, Morris worked alone in a satellite office with her assistant, and her assistant had taken medical leave just before Meeks' arrival. Morris could not leave her office

unattended, so Small provided Meeks with the instruction that she did receive.  Dkt. No. 37, ¶¶ 19-23.[4]

Meeks took great issue with the quantity and quality of training that she was provided.  Still, she did describe some training on the computer systems from Small.  Meeks was seated next to Small in Small's office.  Meeks was supposed to be taking notes while Small showed her what to do on the computer. Meeks Dep. 75:15-76:4.  Meeks had difficulty seeing with her bifocals, hearing Small speak, and simultaneously watching the computer and taking notes.  Id. at 78:14-21.  Meeks told Small that she could not see the screen and could not hear her. According to Meeks, Small then lowered her voice, which Meeks felt was intentional.  Id. at 117:9-118:23.  For a brief period, Small had Meeks sit at Small's computer while Small told Meeks what to click on.  Id. at 94-95.

In addition to the training in Small's office, Meeks acknowledged several communications in which Small did seem to provide Meeks with templates needed for her job.  Id. at 98. Meeks expressed that Small, through "rude treatment", made it obvious she did not want to be interrupted and did not want Meeks asking her questions.  Id. at 111:8-17.  Meeks started

---

[4] Meeks stated that she did not have the requisite knowledge to admit or deny most of this and denied the remaining allegations, but she did not point to any record evidence to dispute these facts. Dkt. No. 49-4, ¶¶ 19-22.  Meeks denies that she received training from Small and did provide record citations to her own deposition testimony on that point.  Id. at ¶ 23.

AO 72A
(Rev. 8/82)

emailing all of her questions to Small.  Id. at 109:10-21.
Though she may have been exaggerating, Meeks once stated that
she sent Small fifty emails a day.  Id. at 109:4-9.  Although
Meeks described that she sent "many, many, many, many" emails to
Small that received no response, Meeks acknowledged several
emails that Small responded to and questions that Small
answered.  See id. at 98-109.  Other BHA employees, such as
Bassett, Sherry Herrin, and Glenda Wainright, helped Meeks with
her job-related questions.  Dkt. No. 37, ¶ 30; Dkt. No. 49-4, ¶
30.

Despite her dissatisfaction with her training, Meeks
testified that she was able to perform the tasks that she
already knew how to do, such as processing applications, working
on annual re-certifications, and taking phone calls from
applicants.  Meeks Dep. 66:3-25.  Meeks testified that she
"begged to be trained for more so that [she] could do more,
because [she] knew [Small] . . . had a lot on her plate, but
[she] kept being told that [Small] didn't have time to train
[her]."  Id. at 66:3-11.  Meeks contends that she told Small she
"[would] work as hard as anybody ever worked for [her] if [Small
would] just train [her] enough to do [her] job."  Id. at 116:7-
13.  Meeks also said that it would take time to train her.  Id.
Meeks alleged that Small spent four days training a temporary
worker, Betty Johnson.  Meeks Dep. 112.

At some point, Meeks told Knox that she could not hear Small very well and was not getting adequate training from Small. Meeks said that she was looking into getting a hearing aid and asked for time off to attend related appointments. Knox granted Meeks' request for time off. She asked Meeks if Small was the only person she had trouble hearing, and Meeks answered, "Yes." Dkt. No. 37, ¶¶ 31-33; Dkt. No. 49-4, ¶¶ 31-33. Knox spoke with Small and told her that Meeks was having trouble hearing her, and Small agreed to speak louder. Dkt. No. 37, ¶ 34.[5] Meeks had her hearing tested on August 7, 2012, and the audiologist determined that she had "mild to moderate sensorineural loss." Dkt. No. 37, ¶¶ 81-82; Dkt. No. 49-4, ¶¶ 81-82. Meeks emailed Knox regarding her doctor's appointment on August 20, 2012. Dkt. No. 35-5. She wrote, "the doctor found a slight hearing loss in low tones – not enough that I normally have a problem but since I am having some difficulty, she recommended a hearing aid that would pick up those sounds without lots of background noise." Id.

Meeks maintains that her hearing problem rises to the level of a disability when she is not using a hearing aid and only for low tones; she can hear normal conversations. Meeks Dep. 203-04. However, Meeks also testified that there is nothing she cannot do as a result of her hearing loss. Id. at 206:17-19.

---

[5] Meeks disputes this by pointing to her testimony about Small speaking softer when Meeks asked her to speak up. Dkt. No. 49-4, ¶ 34; Meeks Dep. 117-119.

AO 72A
(Rev. 8/82)

Bassett also had hearing problems and wore hearing aids in each ear; he did not have any problems hearing or communicating with Small. Dkt. No. 32-6 ("Bassett Decl."), ¶¶ 4, 9.

According to BHA, Meeks was not catching on to the Elite system, used for maintaining tenant information, was not effectively reducing the Section 8 workload, and was not the "self-starter" that BHA needed in the HCV Specialist position. Dkt. No. 37, ¶¶ 35-36. Meeks denies these allegations but provides no record citations or evidence to support the denial. Dkt. No. 49-4, ¶¶ 35-36. In an affidavit, Meeks stated that she found documents on her computer created by the previous person that held the Section 8 HCV Specialist position and began training herself with them.[6] Dkt. No. 49-2 ("Meeks Aff."), ¶¶ 12-13. Meeks completed a re-certification for Small to review, and Small found "few if any errors." Small did not check the next six re-certifications Meeks gave her to review. Id. at ¶¶ 15-18. Meeks expressed that her problem was with inputting information into the system used by BHA, which she resolved by studying the documents she found on the computer. Id. at ¶¶ 21-22. Small confirmed that Meeks would do the work for the re-certifications, but she would not complete those re-certifications by putting them into the system. Small Dep. 25-

---

[6] In her deposition, Meeks stated that Collins helped her find a training document on the computer after she had been at BHA for a few weeks. Meeks stated that these "[a]bsolutely" assisted her in doing her job. Meeks Dep. 79-81.

29. Small felt that Meeks had a confidence issue and was nervous about making mistakes. Id.

Meeks, to dispute the contention that she was not performing adequately, outlined her extensive experience with using computers and stated that she never had any problems previously with learning how to operate computers. Meeks Aff. ¶¶ 23-27. She thought that she would have reached an effective performance level sooner if she had been given appropriate training. Meeks expressed that no one at BHA ever told her she was not performing adequately. Id. at ¶¶ 19, 6.

Small told Strickland that Meeks was not picking up the work in the HCV Specialist position, and Small did not know what else to do to train Meeks. Small also thought that Meeks had a personal problem with her. Strickland Decl. ¶ 22. Strickland observed that Meeks had "disdain" for Small and stated that "no matter what happened, it was always [Small's] fault." Strickland Dep. 37. Strickland stated that Meeks "was not able to perform to our standards in the HCV specialist position. She was not catching on to the computer system. There was constant conflict between her and Jewel that hampered the work flow." Strickland Dep. 20:21-25. Knox testified, "we needed someone in there that could . . . pick up the pace and keep going, and that wasn't happening." Knox Dep. 23:20-23.

Aware of the strained relationship between Meeks and Small and the backlog of work in the Section 8 department, Strickland decided to transfer Meeks to a receptionist position that was previously eliminated due to budget cuts. Strickland Decl. ¶ 23; Dkt. No. 37, ¶¶ 39-40. Since the position was eliminated, various employees had been handling the receptionist duties on a rotating basis. Id. Strickland received approval from the BHA Board of Directors to re-open the position, and she informed Meeks of the transfer in mid-September of 2012. Strickland Decl. ¶ 25. Strickland told Meeks that she was reassigning her because the work was getting behind. Meeks reminded Strickland that she did not receive proper training, and Strickland said there was no time to train Meeks. Meeks Aff. ¶¶ 8-10. Meeks asked Strickland if the transfer was a "derogatory action", and Strickland said it was not. Meeks told Strickland that she would have a problem if it was because she was formerly an EEOC counselor.[7] Meeks Dep. 134. The transfer did not result in a pay cut, a change in eligibility for benefits, or an extension of the introductory period. Dkt. No. 37, ¶ 44; Dkt. No. 49-4, ¶ 44.

Small was no longer Meeks' supervisor in the new position; rather, Meeks was to report to Knox, which Meeks did not realize

---

[7] Later in her deposition, Meeks stated that she only told Small that she was an EEOC representative at this time. Meeks later stated that she told Strickland about this fact at a meeting on September 26, 2012. Meeks Dep. 225-26.

until about a week after the transfer. Meeks Dep. 135-37.
Though Strickland and Knox both stated that Leslie Bautista
trained Meeks for the receptionist position, Meeks only admits
that she asked "[w]hoever was close" questions regarding the
receptionist position. Dkt. No. 37, ¶¶ 46-47; Dkt. No. 49-4, ¶¶
46-47. Meeks also stated that Linda Gibson was helpful to her
in the receptionist position. Meeks Dep. 123:24-124:2. On
September 20, 2012, in an email to Small, Meeks noted that she
was not yet adept with working the calendar system. Dkt. No.
34.

Strickland hired Aliya Belton for the HCV Specialist
position pursuant to a recommendation from a colleague of
Strickland's who worked for Goodwill. Strickland Dep. 42:17-24.
Belton and Small did not know each other before Belton came to
work for BHA. Dkt. No. 37, ¶ 75. Belton is an African American
female who was 32-years-old at the time of her deposition. Dkt.
No. 35 ("Belton Dep."), 7:1-6. Although Morris had been unable
to provide additional training for Meeks because her assistant
was out when Meeks started, Morris had sufficient staff in her
office by the time Belton was hired for Morris to help train
Belton. Dkt. No. 33-1 ("Morris Dep."), 20:22-25, 23:1-7.
Belton testified that Morris trained her for about four or five
days. Belton Dep. 9:24-25. Belton also testified that although
Small was her supervisor, Small was not responsible for her

AO 72A
(Rev. 8/82)

training.  Rather, Belton felt personally responsible for
ensuring that she understood everything needed to perform her
job.  Id. at 11:7-22.  For example, Belton participated in
"self-directed" training that she discovered by consulting the
administrative policy and guidebook.  Id. at 18:23-24, 19:1-4.

On September 26, 2012, there was a meeting between
Strickland, Knox, and Meeks to check in with Meeks regarding the
receptionist position.  Dkt. No. 37, ¶ 55-56; Dkt. No. 49-4, ¶
55-56.  At some point during the meeting, Strickland asked Small
to join.  Id. at ¶ 57.  Meeks expressed that she was frustrated
about the fact that she never received the training that Belton,
the new HCV Specialist, was receiving.  Meeks Dep. 166-67.
After the meeting, Strickland emailed Meeks to ask what training
she felt she still needed to be able to perform in the
receptionist position.  Meeks responded with several items she
felt she needed training on, including the calendar and kiosk
systems.  Strickland asked Knox to follow up with Meeks
regarding the training Meeks requested.  Id. at ¶ 58-60.
Collins testified that he retrained Meeks on the Outlook
calendar system and the Lobby Central kiosk program.  Dkt. No.
37, ¶ 61.[8]

---

[8] Regarding this training, Meeks states that she "does not have the requisite
knowledge to admit or deny what Ms. Strickland [sic] allegedly asked anyone
and denies the remaining allegations", but she did not provide any record
citations to contradictory evidence.  In her deposition, she testified that

AO 72A
(Rev. 8/82)

Small and Knox both testified about having received complaints from customers that Meeks was rude to them. Strickland was made aware of those complaints. Dkt. No. 37, ¶¶ 61-63. Even when Meeks was in the receptionist position, she was still in the introductory period of her employment, and Strickland testified that BHA does not typically "write people up" during that period. Strickland Dep. 21:6-15.

According to Strickland,

> Ms. Meeks was coming up on her three-month portion of her introductory period. There were issues even after her transfer with her catching on to our systems. There was still conflicts with [Small] in the office, because even though she did not work for [Small], she worked with [her] . . . There were client complaints that she was rude to them in the lobby and on the phone. So at that time, we just decided if this is how things are going in the introductory period, we didn't see a reason it would change.

Id. at 36:11-22. Strickland terminated Meeks' employment on October 3, 2012. Dkt. No. 37, ¶ 66; Dkt. No. 49-4, ¶ 66. BHA then hired Susan Bratton, a 48-year-old white woman, as a receptionist. Strickland Decl. ¶ 35.

Meeks filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 11, 2012. Dkt. No. 28-1. In the area of the form labeled "Discrimination Based On", Meeks checked the boxes for race, age, and disability. She did not check the box for retaliation. Id. In

---

she received "some training scheduled from [Knox]" after she told Strickland what training she needed for the receptionist job. Meeks Dep. 138:14-24.

AO 72A
(Rev. 8/82)

the description area, Meeks expressed that she met the standards

for the position but "was not provided with the proper tools to

be successful in [her] job to include training, manuals, another

trainer, and accommodations." Id. Meeks also wrote:

> On or about July 20, 2012, I was diagnosed with my
> disability, and informed Ruthie Knox (W/F, 50s),
> Director of Operations. During my employment, I was
> subjected to intimidation by Jewel Small (AA/F 20s),
> Supervisor, to include, rude tone when asking
> questions, and refusal to answer work-related e-mails.
> On or about September 11, 2012, I was reassigned to
> the position of Receptionist, by Angela Strickland
> (W/F, 40s), Executive Director, and was not provided
> training for the position. On September 11, 2012, a
> significantly younger African American female assumed
> my original position, and received training by the
> trainer I was denied. On or about September 20, 2012,
> I was called into a meeting with Ms. Strickland, Knox,
> and myself, where I was intimidated. On October 3,
> 2012, I was discharged from my employment.
>
> When I asked Ms. Small for help, she would slam phones
> and say "yes, what is it now," as if I was
> inconveniencing her. Ms. Small told me there were no
> manuals, and there was no other trainer. Ms.
> Strickland reassigned me because of the caseload and
> because Ms. Small did not have time to train me. In
> the meeting, Ms. Strickland told me in a very harsh
> tone she could not believe I was getting assistance
> with my disability. My separation notice states that
> it was decided that I would not be retained during the
> probationary period.

Dkt. No. 28-1. She further added that she believed she had been

discriminated against based on her race (Caucasian), her age

(73), and her disability. Id. Meeks was issued a right-to-sue

letter on October 23, 2012. Dkt. No. 1-2.

AO 72A
(Rev. 8/82)

For the analysis of Meeks' race discrimination claim, the races of certain relevant individuals are: Rick Bassett (Native American); Leslie Bautista (Hispanic); Aliya Belton (African American); Susan Bratton (White); Brian Collins (White); Linda Gibson (African American); Sherry Herrin (White); Betty Johnson (African American); Ruthie Knox (White); Ruby Meeks (White); Hope Morris (African American); Jewel Small (African American); Angela Strickland (White); Glenda Wainwright (White). Dkt. No. 54, ¶¶ 91-92; Dkt. No. 57-1, ¶¶ 91-92.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T.

<u>Washington Broad. Serv., Inc.</u>, 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. <u>Id.</u> at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. <u>Anderson</u>, 477 U.S. at 257. The nonmovant may satisfy this burden in two ways: first, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting <u>Celotex</u>, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of is conclusional allegations, summary

AO 72A
(Rev. 8/82)

judgment for the defendants [is] not only proper but required."
Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## DISCUSSION

## I. Age Discrimination in Employment Act ("ADEA") Claim

In support of her age discrimination claim, Meeks alleges that BHA did not provide her with assistance and training and treated similarly-situated, younger employees more favorably. Meeks contends that she suffered unwarranted discipline and termination, adverse employment actions, because of her age. Dkt. No. 1, ¶¶ 47-51.

A plaintiff may establish an age discrimination claim through direct evidence or through circumstantial evidence, using a variation of the test outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1358 (11th Cir. 1999).

> In order to make out a prima facie case for an ADEA violation, the plaintiff must show that he (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual.

Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir. 1997) (citations omitted). The Eleventh Circuit has noted that although the plaintiff's burden in proving a prima facie case is "light," "summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie

AO 72A
(Rev. 8/82)

case." Id. at 1433; see Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1520-21 (11th Cir. 1990) (noting that although the plaintiff had extensive experience in sales, the district court properly determined that she was unqualified where she failed to meet the sales quota). After the plaintiff establishes a prima facie case, the burden shifts to the employer to show that the employer had a legitimate, nondiscriminatory reason for its actions. Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998). "In order to prevail, the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination." Id. "[T]he plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 177 (2009).

Meeks has not put forth direct evidence of age-based discrimination, and in her response to BHA's Motion for Summary Judgment, she does not purport to have done so. See Dkt. No. 49-1, p. 8. Thus, the issue is whether or not Meeks has established a prima facie case through circumstantial evidence. The primary evidence of age discrimination that Meeks offered was the fact that Small called her "Miss Ruby". She also noted that Collins once said people would be nice to her because she was older. Meeks Dep. 202. As further evidence of age

18

discrimination, Meeks pointed to the fact that she is no longer working at BHA and the fact that BHA does not employ anyone else who is her age.  Id.

BHA concedes that Meeks was a member of the protected group and that she was qualified to do the job.  Whether she was subject to adverse employment action and replaced by a younger individual are in dispute.  Meeks' argument on these points is somewhat disjointed.  See Dkt. No. 49-1, p. 8.  For instance, she points to her termination as the adverse employment action but notes that she was replaced by Belton.  Meeks was only replaced by Belton in her transfer, not in her termination, which was from the receptionist position.  Further, Meeks contends that Belton's hiring shows that BHA had decided to fire Meeks before they hired Belton, but the evidence does not support that conclusion.

Given that the only adverse action Meeks pointed to was her termination, the Court will consider the age discrimination claim as it relates to that action.  Meeks has made out a prima facie case for age discrimination.  Meeks was terminated, which is undeniably an adverse action.  She was also replaced by a younger individual, whether we consider that to be Belton in the HCV Specialist position or Bratton (48-years-old) in the receptionist position.

AO 72A
(Rev. 8/82)

BHA provided three legitimate, non-discriminatory reasons for terminating Meeks. They were essentially that (1) Meeks was having trouble catching on to BHA's computer systems, (2) there was a personal conflict between Meeks and Small, and (3) customers had complained about Meeks being rude to them. Strickland Dep. 36. BHA also suggested that the decision was, in part, tied to the fact that all of this was happening while Meeks was still in the introductory period of her employment.

In an attempt to show that she did not, in fact, have performance issues, and thus that the first reason provided by BHA was pretext for discrimination, Meeks cites to her own affidavit. Meeks stated that she trained herself in the HCV Specialist position and was adequately performing at the time of her transfer. However, this is undermined by her own constant assertion that she was not given the training and tools necessary to do her job. Meeks takes issue with the fact that Belton was provided more training and better training than she was, after Strickland told Meeks that there was no time to provide Meeks with training. However, Meeks had been working at BHA for roughly two months, and as Meeks herself acknowledges, Strickland observed that "the work was getting behind." Meeks Aff. ¶ 8. Transferring Meeks to a different position in an attempt to improve the Section 8 backlog issue was a legitimate way to address that problem, which had nothing to do with Meeks'

AO 72A
(Rev. 8/82)

age. The evidence shows that Belton, the next HCV Specialist, was able to be trained by Morris because Morris' assistant returned from medical leave around the time Belton started working at BHA. Meeks has not been able to show that the reason she was transferred was based on her age rather than the backlog of work in the Section 8 department, and she has not been able to show that she was not trained by Morris because of her age, rather than the reason BHA asserts—a legitimate staffing shortage in Morris' satellite office when Meeks first started at BHA. As for the receptionist position, Meeks provided a long list of items that she felt she was not adequately trained on as of September 27, 2012. This illustrates that Meeks' performance issues persisted in the new position. The fact that Meeks was able to operate computer systems when she had better training in the past does not demonstrate that the reason BHA provided for transferring and then firing Meeks was pretext for discrimination based on her age.

The next reason Strickland cited for terminating Meeks was the tension that had developed between Meeks and Small. The evidence shows that this had indeed occurred. Meeks felt that Small was rude to her and inadequately trained her, and Small felt that Meeks was hostile towards her and spoke to her in angry tone of voice. Small Dep. 36-38, 45; Strickland Dep. 37. Meeks has the burden of showing that this reason, the tension

AO 72A
(Rev. 8/82)

between she and Small, was actually a pretext for firing her based on her age. Meeks has failed to rebut this reason with evidence that it was pretextual.

Meeks attempts to rebut the evidence of customer complaints by arguing that she was never informed of any complaints and by suggesting that the customer complaints were fabricated. Dkt. No. 57, p. 7. Meeks states that no evidence exists of the complaints. Id. However, the fact that Meeks was not informed of the complaints does not prove that they were fabricated, and while there may not be documentary evidence, deposition testimony (by Small, Knox, and Strickland) is evidence that complaints were made. Apart from the lack of documentation and Meeks' own ignorance of the complaints, Meeks' assertion that the complaints were fabricated is not supported by any facts. Meeks has failed to show that the customer complaints cited to by BHA were pretext for discrimination based on her age. It is, of course, true that Meeks was still in the introductory period of her employment, and there is no evidence that this reason was pretextual.

Meeks has failed to rebut the reasons provided by BHA for her termination with evidence of that those reasons were pretext for age-based discrimination. As no genuine dispute of fact exists, summary judgment is **GRANTED** on Meeks' ADEA claim.

## II.  **Americans with Disabilities Act ("ADA") Claim**

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that, at the time of an adverse employment action, (1) he had a disability, (2) he was a qualified individual, and (3) he was subjected to unlawful discrimination because of his disability. Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014) (citing Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255-56 (11th Cir. 2007)). According to the ADA, the term "disability" means:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment[.]

42 U.S.C.A. § 12102(1). Hearing is considered a major life activity, and "the determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . hearing aids and cochlear implants or other implantable hearing devices[.]" 42 U.S.C.A. §§ 12102(2) & (4)(E)(i)(I).

"An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability—unless doing so would impose undue hardship on the employer." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 U.S.C.A. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a)). An

AO 72A
(Rev. 8/82)

accommodation is reasonable and thus required by the ADA "only if it enables the employee to perform the essential functions of the job." Id. It is the plaintiff's duty to identify an accommodation and show that the accommodation would allow him to perform the job's essential functions. Id. at 1255-56 (citations omitted). Finally, an employer is not expected to accommodate disabilities of which it is unaware. 29 C.F.R. 1630, App.

Meeks bases her ADA claim on a hearing impairment. Meeks contends that she was a qualified individual whom BHA "excluded [] from participation in and denial of the benefits of the services, programs, or activities of Defendant and subjected Ms. Meeks to discrimination by Defendant." Dkt. No. 1, ¶ 53. Meeks contends that, although BHA granted her request for time off to obtain a hearing aid, Small discriminated against Meeks by refusing to speak louder and also "demeaned Ms. Meeks's hearing problem." Dkt. No. 1, ¶¶ 34, 35, 44. Meeks testified that Strickland commented that she could not believe Meeks had to get a hearing aid because of one person. Meeks Dep. 165, 223.

BHA argues that Meeks is not disabled, because she could hear normal conversations and was only unable to hear low tones. Moreover, Meeks did not even realize she had a problem hearing until she worked with Small. Meeks testified that there is nothing she cannot do as a result of her hearing loss. After

AO 72A
(Rev. 8/82)

her doctor's appointment, Meeks emailed Knox stating that the doctor found "slight hearing loss in low tones", and Meeks told Knox that Small was the only person she could not hear.

Federal regulations provide that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability under the meaning of this section." 29 C.F.R. § 1630.2(j). "'Substantially limits' is not meant to be a demanding standard." Id. Looking at the evidence in the light most favorable to Meeks as the nonmovant, Meeks has submitted sufficient evidence from which a factfinder could find that she is disabled by a hearing problem.

Apart from asking for time off which was granted, the reasonable accommodations that Meeks claims she requested were to be trained by someone other than Small and to have Small speak louder. Regarding the different trainer request, Meeks made a general statement that she asked Small "for somebody else that [she] could hear that knew what they were doing to train [her]", but Meeks confessed that when she raised the issue of her hearing problem to Knox, she did not ask BHA to provide her with a different trainer. Meeks Dep. 214-216. She said, "At that time I was going to try the hearing aid thing first." Id. at 215. Even assuming Meeks' request to Small for a different

trainer was a request for a reasonable accommodation that came after BHA was made aware of Meeks' disability, which is not at all clear, BHA has shown that the requested accommodation would have imposed an undue hardship. An accommodation is an undue hardship when it requires significant difficulty or expense, when considered in light of several factors, including the number of persons employed at the facility and the impact of the accommodation on the operation of the facility. 42 U.S.C.A. § 12111(10).

The evidence demonstrates that Morris was alone in her satellite office when Meeks began working at BHA. Strickland Decl. ¶ 17. Meeks suggests that other people could have covered for Morris as they later did when Belton started working at BHA, but BHA has demonstrated that Morris' assistant's absence would have left Morris' satellite office unattended, which was no longer the case when Belton began working at BHA. Moreover, Morris testified that the people who assisted her while she was training Belton were too busy to assist her when she was asked to train Meeks. The fact that it was no longer an undue hardship for Morris to leave her satellite office to assist with training by the time Belton started at BHA does not detract from BHA's assertion of undue hardship when Meeks started at BHA, in light of the evidence of Morris' assistant's absence and Morris' testimony about the workloads of the people who eventually

AO 72A
(Rev. 8/82)

assisted her while she trained Belton. Morris Dep. 23. The accommodation Meeks allegedly requested would have prevented other people from performing their own jobs, which would create significant difficulty for BHA.[9]

Meeks contends that she also requested that Small speak louder as an accommodation.[10] While Meeks may have made this request while Small was training her, Meeks herself was not aware of her hearing problem before she worked with Small. Thus, it is a stretch to say that BHA was made aware of Meeks' actual disability merely because she asked Small to speak louder. Though BHA contends it did not know Meeks had a disability, BHA became aware of Meeks' disability when Meeks spoke with Knox about her hearing difficulties, took time off for a doctor's appointment, and reported back to Knox regarding the doctor's findings. Her email to Knox after the appointment was dated August 20, 2012. By this time, over a month after Meeks started working at BHA, the initial few days of training with Small had passed. At some point, Meeks started asking all of her questions to Small over email. Meeks has not established that Small's speaking louder, by the time BHA was aware of her

_____

[9] Meeks proposes that she could have received training from Nan McKay, a third-party training vendor, and says that she asked for this training from Small, who denied the request. Meeks Dep. 131-132. It is not at all clear that this was a request for a reasonable accommodation from BHA rather than a general request made to Small for additional training. In any event, Strickland explained that Nan McKay training is not always available in the area, Strickland Decl. ¶ 33, and Meeks provided no evidence to the contrary.
[10] There is a dispute regarding whether or not Small actually did speak louder after she was asked to do so, so the Court will assume that she did not.

27

disability, would have allowed her to perform the essential functions of the HCV Specialist position. Thus, this requested accommodation was not "reasonable" and not required by the ADA by the time BHA became aware of Meeks' disability. See Lucas, 257 F.3d at 1259-60 ("An accommodation is 'reasonable' and necessary under the ADA only if it enables the employee to perform the essential functions of the job."). Plaintiff has failed to show that she was unlawfully discriminated against because of her disability based on her requested accommodations.

Meeks argues that her hearing problems "had everything to do with" her termination. Meeks contends that her inability to hear "began the problems because [Small] would not speak louder", and "[t]he moving of [Meeks] to the receptionist position followed by [Meeks'] firing demonstrated the rancor that developed from [Small] refusing to talk louder." Dkt. No. 49-1, p. 9. Though Meeks stated that she never heard any disability-related statements at BHA, she claims that Strickland said she could not believe Meeks had to get a hearing aid because of one person. Meeks Dep. 165, 223. Strickland's alleged comment is not direct evidence of discrimination. Direct evidence is not that which *suggests* discrimination but rather "that which proves the existence of a fact [in issue] *without inference or presumption*." Early v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (providing an

example of direct evidence as a management memorandum saying, 'Fire Earley—he is too old.'"). Rather than reflecting a direct intent to discriminate based on Meeks' hearing problems, Strickland's alleged comment reflects, at worst, Strickland's impression, from the information Meeks provided, that Meeks' hearing problem did not seem severe enough to warrant a hearing aid.

Meeks has failed to make out a prima facie case of discrimination based on her disability. Even if she had, Meeks has not shown that the reasons BHA provided for her termination were pretext for discrimination based on her disability. By the time Meeks moved to the receptionist position, she received training from people other than Small, and Meeks no longer reported to Small. Meeks was given the opportunity to succeed in a new position where she had less interaction with and dependence on Small, the only person who she professed to have difficulty hearing. It is true that "rancor" seems to have developed between Meeks and Small—this was even one of BHA's reasons for terminating Meeks—but Meeks has not shown that the tension between her and Small was actually a pretext for discrimination based on Meeks' hearing difficulties. Small's failure to speak up may have been a reason for the rancor coming from Meeks, but there is simply no evidence that BHA's decision to fire Meeks was motivated by her disability, especially in

AO 72A
(Rev. 8/82)

light of the fact that she was fired from the receptionist position. See Woolsey v. Town of Hillsboro Beach, 541 F. App'x 917, 920 (11th Cir. 2013) (plaintiff failed to show age discrimination was reason for demotion rather than strained relationship and disagreements with boss about how department should be run). The evidence shows that BHA was concerned about Meeks' attitude, one manifestation of which was her negativity towards Small. Meeks' criticisms of Small were not limited to the volume of Small's speech. Meeks was critical of the way Small performed her job and Small's general demeanor. Meeks Dep. 92-94, 109-11, 167-69. The evidence, even in a light most favorable to Meeks, shows a personality conflict, and perhaps also that Small was busy and rude, but not unlawful discrimination.

As there is no genuine dispute of material fact regarding Meeks' claim of unlawful discrimination based on her disability, summary judgment is **GRANTED** as to this claim.

## III. Race Discrimination Claim

As Meeks has presented no direct evidence of race discrimination, her claims are based on circumstantial evidence and governed by the McDonnell Douglas burden shifting framework.[11] 411 U.S. at 802. In order to establish a prima facie case of race discrimination under Title VII, a plaintiff

---

[11] Meeks also analyzes her own claim under this framework in her response to BHA's motion to dismiss. Dkt. No. 57, p. 4.

AO 72A
(Rev. 8/82)

must establish: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or treated less favorably than a similarly-situated individual outside his protected class." Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003). Once the plaintiff has made this showing, the defendant must set forth, through admissible evidence, its reasons for employment decision at issue. Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 843 (11th Cir. 2000) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255-56 (1981)). If the defendant carries this burden of production, the plaintiff then has the opportunity to demonstrate that the reason proffered by the defendant was not the true reason for the employment decision. Id. The plaintiff's new burden "merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination." Id. The plaintiff may do this by directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's explanation is not worthy of credence. Id.

Meeks alleges that "[i]n firing [her]", BHA treated Meeks "in a disparate manner by subjecting her to Defendant's unfair policies and practices because of her race, white, by replacing

[Meeks] with a lesser qualified black female . . . and then discharging [Meeks] from her employment due to her race and age." Dkt. No. 40, ¶ 59.  She also contends that the reasons provided by BHA were pretext for unlawful discrimination.  Id. at ¶ 60.  In support of these contentions, Meeks notes that she was never disciplined prior to her termination and never informed of any customer complaints about her.  Id. ¶ 61; Dkt. No. 57, pp. 5-7.  She points to the fact that Johnson and Belton, both African Americans, received attention from Small that Meeks never received.  Meeks also contends that Small wanted Belton to have Meeks' job because Small and Belton had a mutual friend.

For summary judgment purposes, BHA concedes that Meeks is a member of a protected class and was qualified for the position. Meeks' termination was indeed an adverse employment action, so with regard to that action, Meeks must show that she was replaced by a person outside her protected class or treated less favorably than a similarly-situated individual outside her protected class.  In the receptionist position, Meeks was replaced by a white person, so that does not support her case. Meeks also contends that she was replaced in the HCV position by Belton, a similarly-situated individual outside of her protected class, and that she was treated less favorably than Belton and Johnson, who were both outside of her protected class.  Although

AO 72A
(Rev. 8/82)

Meeks' race claim focuses on her termination, Meeks' pointing to the treatment of Belton and Johnson suggests that she feels that her alleged lack of training and transfer were also relevant actions. BHA argues that these were not adverse actions. Even assuming that they were, Meeks has still failed to meet the last element of the prima facie case for discrimination regarding her alleged lack of training and her transfer to the receptionist position. To show that she was treated less favorably than similarly situated employees outside of her protected class, Meeks must show that she and her alleged comparators "are similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). "In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id. Johnson, as a temporary staffing agency employee, was not similarly situated to Meeks, because Johnson was not a permanent employee of BHA. Meeks has not shown that Belton was similarly situated because Belton started working for BHA at a different time than Meeks and when staffing demands were more favorable. Moreover, there is no evidence that Belton had difficulty catching on to BHA's computer systems and completing the work required of her, as the evidence, to some extent, shows that Meeks did.

AO 72A
(Rev. 8/82)

Assuming that Meeks had been able to establish a prima facie case, she has not shown that the reasons BHA provided for her alleged lack of training, her transfer, and her termination were pretexts for discrimination based on her race. Meeks was unable to be trained by someone other than Small because Morris' assistant was on medical leave, and the work demands on other BHA employees would not permit them to drop their own work to cover for Morris at that time. The reason Strickland gave for Meeks' transfer was that the work was getting behind. Though Meeks claims she trained herself and was adequately performing in the HCV Specialist position at the time of her transfer, this is undermined by her repeated argument that she was denied training that was necessary to perform her job. Meeks testified that she did not even use the program that changed client information such as rent because she "really had not had enough training to be comfortable with changing people's rents. And I couldn't even get Jewel to check my work to let me know if it was right or wrong." Meeks Dep. 85-86. This seems to corroborate Small's testimony that Meeks was not completing the annual re-examinations by putting the work she had done into the computer system. Small Dep. 25-26. The evidence supports Strickland's assessment that the workload, which was already an issue, was getting further behind, and Meeks has not provided

AO 72A
(Rev. 8/82)

any evidence that this reason was actually a pretext for transferring her based on her race.

Meeks' contention that Small wanted to get rid of Meeks and hire Belton because Small had a mutual friend with Belton, is not supported by any evidence. The evidence shows that *Strickland* was introduced to Belton by a colleague, and Belton and Small did not know each other at all before Belton came to work for BHA. Meeks testified that Small was the only person who discriminated against her based on her race. Meeks Dep. 183:13-15 ("But the race thing was only from Jewel. I did not experience that from anybody except Jewel."). Meeks also testified that Small was not involved in her termination:

> Q. Who do you claim retaliated against you?
> A. Everybody that was involved in my termination. I guess it was [Strickland]'s decision.
> Q. Anybody else you claim retaliated against you?
> A. No, because [Small] had already done her damage by the time I was reassigned. She was rid of the problem.

Id. at 226. Meeks contends that "Ms. Small [discriminated against her] with the knowledge of Defendant", but Meeks provides no evidence to support this claim. Dkt. No. 57-1, ¶ 94. BHA argues that Meeks cannot prove her termination was based on race because she has essentially conceded that Strickland, someone Meeks does not claim discriminated against her based on her race, made the decision to terminate her. Dkt. No. 53, pp. 12-13 (citing Peters v. HealthSouth of Dothan, Inc.,

AO 72A
(Rev. 8/82)

542 F. App'x 782, 787 (11th Cir. 2013) (stating "[t]hat concession alone was enough to warrant summary judgment on [plaintiff's] claim of discriminatory discharge" where plaintiff acknowledged that the person who made the decision to fire her had not discriminated against her because of her race)). Meeks attempts to distinguish Peters by stating that "[Small] had involvement in Meeks' employment", and "[Strickland's] decision to terminate [Meeks] did not occur in a vacuum but involved all that transpired between [Meeks] and [Small]." Dkt. No. 57, p. 5. While those statements are true, they do not show that the decision to fire Meeks was based on race rather than the legitimate, nondiscriminatory reasons provided by BHA.

BHA provided legitimate, nondiscriminatory reasons for Meeks' alleged lack of training, for Meeks' transfer, and for Meeks' termination.[12] Meeks has failed to rebut those reasons directly, by showing that race discrimination more likely motivated BHA's decisions, or indirectly, by showing that BHA's explanations for its decisions were not worthy of belief. Meeks has ultimately failed to carry the ultimate burden of persuasion regarding her claim of race-based discrimination. Summary judgment is **GRANTED** as to this claim.

## IV. Retaliation

---

[12] As discussed above, the reasons provided for Meeks' termination were that Meeks continued to struggle with BHA's systems, Meeks had a contentious relationship with Small, clients had complained about Meeks, and Meeks was still in her introductory period of employment. Dkt. No. 53, p. 10.

AO 72A
(Rev. 8/82)

BHA contends that Meeks' retaliation claim should be barred because Meeks failed to include it in her EEOC Charge. BHA points out that all of the allegedly retaliatory conduct took place before the Charge was filed, and Meeks should have known to check the box for retaliation, both because she was represented by counsel when she filed the Charge and because she claims to have been an EEOC representative in the past.

Before filing a Title VII action, a plaintiff must file a Charge of Discrimination with the EEOC. Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970)). The purpose of this requirement is to give the EEOC the first opportunity to investigate the alleged discriminatory practices so that it may attempt to help resolve the situation if it sees fit. Id. (citations omitted). "[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 1280 (internal citations and quotations omitted). Where judicial claims "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, they are permitted, "but allegations of new acts of discrimination are inappropriate." Id. at 1279-80 (citing Wu v. Thomas, 863 F.2d 1543, 1548 (11th Cir. 1989)). Still, courts are "reluctant to allow procedural technicalities to bar claims" and "the scope of

37

an EEOC complaint should not be strictly interpreted." _Id._ at 1280 (quoting _Sanchez_, 431 F.2d at 460-61, 465).

The elements of a prima facie case of retaliation are (1) plaintiff engaged in statutorily protected activity, (2) an adverse employment action took place, and (3) the adverse action was causally related to plaintiff's protected activities. _Gregory_, 355 F.3d at 1279 (Title VII case); _Brillinger v. City of Lake Worth_, 317 F. App'x 871, 877 (11th Cir. 2008) (ADEA case); _Stewart v. Happy Herman's Cheshire Bridge, Inc._, 117 F.3d 1278, 1287 (11th Cir. 1997) (ADA case). The Court must determine if Meeks' retaliation claims were "like or related to, or grew out of, the allegations contained in her EEOC charge." _Gregory_, 355 F.3d at 1280.

In her EEOC Charge, Meeks' does not explicitly state that she complained about discrimination to BHA. However, she alleges that after she was diagnosed with her disability, she was mistreated, reassigned, and terminated. She recounted that Strickland "told [her] in a very harsh tone she could not believe [Meeks] was getting assistance with [her] disability." Dkt. No. 28-1. Interpreting the scope of the EEOC Charge broadly, Meeks stated facts from which a reasonable EEOC investigator could have concluded that Meeks had complained about her disability and that she was essentially complaining

about retaliation for those complaints when she was mistreated, transferred, and terminated.

Meeks contends that she was retaliated against in association with each of her claims. As for her Title VII retaliation claim, there is no evidence that Meeks ever complained about race-based discrimination. See Meeks Dep. 164, 169-70. Thus, there was no Title VII protected expression, and Meeks fails to make out a prima facie case for that claim.

The ADA and ADEA both contain opposition clauses which provide that it is unlawful for an employer to discriminate against an employee because that employee has opposed discriminatory practices. 42 U.S.C.A. § 12203 (ADA); 29 U.S.C.A. § 623(d) (ADEA). Meeks does contend that she complained about discrimination based on her age and disability at the meeting on September 26, 2012. Meeks Dep. 164, 171-73. She also alleges that she was retaliated against because she was terminated after she told BHA that she had been an EEOC representative in the past. However, the first time she told anyone about the fact that she had been an EEOC representative was after she was allegedly denied training and after she was transferred, so she cannot very well assert that the protected expression caused those actions. For her age and disability retaliation claims, Meeks meets the first two elements of the prima facie case. First, Meeks' complaints about discrimination

AO 72A
(Rev. 8/82)

based on her age and her disability, as well as informing BHA that she had, in the past, been an EEOC representative, constituted statutorily protected expressions. Meeks' termination constituted an adverse employment action. Meeks' causation argument is essentially that she complained and then was fired. See Dkt. No. 49-1, p. 7 ("Defendant did not want working for Defendant a person who knows discrimination when she saw it, particularly when the employee informed Defendant. Defendant apparently thought [Meeks] would go away and not challenge Defendant."). Apart from timing, there is no evidence to support Meeks' argument that BHA's decision to terminate her was in any way causally related to her protected expression.

Even assuming that Meeks established a prima facie case, she has not successfully rebutted BHA's legitimate, nondiscriminatory reasons with evidence that those reasons were pretext for a retaliatory discharge. In an attempt to support her retaliation claim, Meeks notes Strickland's comment about not believing Meeks was getting a hearing aid because she could not hear one person. Meeks again points out that Small spoke softer when Meeks said she could not hear her and that Belton received more training than she did. Meeks cites the fact that her termination came after her protected expression. Finally, Meeks argues that the performance reason provided by BHA seems unworthy of belief in light of Meeks' extensive experience using

AO 72A
(Rev. 8/82)

computers in previous jobs.  Meeks also asserts that she was successful in the HCV Specialist position: she prepared several re-certifications for Small to review but Small refused to review them.  Dkt. No. 49-1, pp. 7-8.

The only pieces of evidence which could potentially rebut BHA's reasons for Meeks' *termination* are those which occurred after Meeks' transfer, because that is when Meeks made her first protected expression.  Thus, Meeks urges the Court to consider that Meeks was terminated not long after the September 26, 2012 meeting, Strickland's comment about Meeks' hearing aid, and the fact that Meeks was successful in using computers in previous jobs.  These assertions do nothing to rebut the legitimate, nondiscriminatory reasons provided by BHA for terminating Meeks.

BHA terminated Meeks' employment because of Meeks' inability to grasp BHA's systems (evidenced by the email to Small in which Meeks acknowledged she did not understand the calendar system yet and by the long list of items she still needed training on as of September 27), her conflicts with Small, client complaints about Meeks, and the fact that Meeks was still in her introductory period of employment.  It is quite possible that BHA was wrong about Meeks' ability to grasp its computer systems based on her previous experience, but it is not the Court's role to second guess an employer's business decisions, as long as those decisions were not made with a

AO 72A
(Rev. 8/82)

discriminatory motive.  See Alvarez v. Royal Atlantic.

Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) (citing

Chapman v. Al Transport, 229 F.3d 1012, 1030 (11th Cir. 2000));

see also Nix v. WLCY Radio/Rahall Comm'ns, 738 F.2d 1181, 1187

(11th Cir. 1984) ("An employer may fire an employee for a good

reason, a bad reason, a reason based on erroneous facts, or for

no reason at all, as long as its action is not for a

discriminatory reason.").  Meeks has failed to show that reasons

provided by BHA for her termination were pretext for a

retaliatory discharge pursuant to protected expressions, and

summary judgment is **GRANTED** on these claims.

### CONCLUSION

As there is no genuine dispute as to any material fact

associated with Meeks' claims, both of BHA's Motions for Summary

Judgment (Dkt. Nos. 28 & 53) are **GRANTED**.  The Clerk of Court is

directed to enter the appropriate judgment.

**SO ORDERED**, this 31ST day of March, 2015.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)